**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**VANESSA MUNIZ GERENA,**

      **Plaintiff,**

      **v.**

**FREEDOM MORTGAGE
CORPORATION,** *et al.,*

      **Defendants.**

Civil Action No. 3:23cv078

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on two motions: (1) Defendant Statebridge Company, LLC's ("Statebridge") Motion to Dismiss Complaint ("Statebridge's Motion to Dismiss"), (ECF No. 77); and (2) Defendants Freedom Mortgage Corporation ("Freedom") and Roundpoint Mortgage Servicing Corporation's ("Roundpoint") Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Freedom and Roundpoint's Motion to Dismiss"), (ECF No. 94), (collectively, the "Motions to Dismiss").[1] Plaintiff Vanessa Muniz responded in opposition to each Motion. (ECF Nos. 84, 104.) Freedom and Roundpoint replied. (ECF No. 105.) Statebridge did not reply, and its time to do so has expired.

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will deny the Motions to Dismiss in their entirety. (ECF Nos. 77, 94.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

Ms. Muniz brings this action against Statebridge, Freedom, and Roundpoint (collectively, "Defendants")[2] for violations of the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681.

### A.   Factual Allegations[3]

#### 1.   Ms. Muniz Discovers That She is a Victim of Identity Theft, Completes an FTC Identity Theft Report, and Files a Police Report

Plaintiff Vanessa Muniz is a victim of identity theft. (ECF No. 1 ¶ 2.)  An unknown thief first stole Ms. Muniz's identity in approximately 2014. (ECF No. 1 ¶ 22.)  Over the course of at least five years, the identify thief fraudulently opened numerous financial accounts using Ms. Muniz's personal identifiers. (ECF No. 1 ¶ 23.)  Relevant to the Motions to Dismiss, in

---

[2] Ms. Muniz filed this case against eleven defendants:  (1) Citibank, N.A.; (2) Freedom; (3) GTE Federal Credit Union d/b/a/ GTE Financial; (4) JP Morgan Chase Bank, N.A; (5) Nationstar Mortgage, LLC d/b/a Mr. Cooper; (6) Newrez, LLC d/b/a Shellpoint Mortgage Servicing; (7) Roundpoint; (8) Santander Consumer USA, Inc.; (9) Statebridge; (10) SF Rosco, LLC; and (11) World Omni Financial Corporation d/b/a Southeast Toyota Finance. (ECF No. 1, at 1.)

Of the eleven original defendants, all but Freedom, Roundpoint, and Statebridge have been voluntarily dismissed. (ECF Nos. 88, 111, 113, 115, 117, 125, 127, 129.)  Unless otherwise specified, the Court's references to "Defendants" throughout this memorandum opinion shall only refer to the three remaining defendants:  Statebridge, Roundpoint, and Freedom.

[3] In considering the Motions to Dismiss, (ECF Nos. 77, 94), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to the Plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Additionally, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam) (citations omitted).

2

approximately August 2018, the identify thief opened "multiple mortgage loan accounts with Freedom . . . Round[p]oint, and Statebridge."  (ECF No. 1 ¶ 23.)

Ms. Muniz first discovered that she was the victim of identity theft in approximately 2015, after "she applied for a cellular telephone account", and "the cellular telephone company informed her that an unknown individual had previously opened a cellular telephone account using her personal identifiers."  (ECF No. 1 ¶ 24.)

On or about March 16, 2021, Ms. Muniz contacted Experian, Equifax, and Trans Union, known as the "Big Three" consumer reporting agencies (collectively, the "CRAs").  (ECF No. 1 ¶¶ 4, 26.)  Specifically, on or about this day, "Ms. Muniz requested and obtained from the CRAs copies of her consumer credit disclosures and learned about" the unauthorized accounts that the identity thief had opened with Defendants.  (ECF No. 1 ¶ 26.)  Nearly three months later, "[o]n June 11, 2021, Ms. Muniz completed an online FTC Identity Theft report, including the fraudulent" accounts with Defendants "that were opened under her name without her knowledge or authorization."  (ECF No. 1 ¶ 28.)  One week later, on June 18, 2021, Ms. Muniz "filed a police report with the Chesterfield County Police Department . . . detailing the identity theft allegations."  (ECF No. 1 ¶ 29.)

### 2. Ms. Muniz Notifies the CRAs and Defendants that Her Credit Files Contain Inaccurate Information

#### a. Notices to CRAs

On approximately April 20, 2021, July 12, 2021, and October 15, 2021, Ms. Muniz "sent correspondence to Experian, Trans Union, and Equifax."  (ECF No. 1 ¶ 30.)  In these contacts, Ms. Muniz "disput[ed] the inaccurate information on her consumer credit reports", including the mortgage accounts that had been fraudulently opened in her name with Defendants, and

"request[ed] that the CRAs investigate and remove the inaccurate reporting from her credit files." (ECF No. 1 ¶¶ 23, 30, 31.)

Ms. Muniz provided the CRAs with a significant amount of information in her correspondence. (ECF No. 1 ¶ 31.) In addition to "assert[ing] that there were inaccurate accounts on her credit reports", "indicat[ing] which accounts were fraudulent, and explain[ing] that she did not open nor authorize any of these inaccurate accounts", Ms. Muniz also provided information related to her identity and information supporting her contention that she was the victim of identity theft. (ECF No. 1 ¶ 31.) To prove her identity, Ms. Muniz provided "copies of her Social Security card, Virginia driver's license, and birth certificate as issued by the Commonwealth of Puerto Rico," as well as a "utility bill demonstrating her residence in the Commonwealth of Virginia." (ECF No. 1 ¶ 31.) In her July 12, 2021 and October 15, 2021 CRA disputes, "Ms. Muniz enclosed copies of her FTC Identity Theft Report and Chesterfield County Police Report." (ECF No. 1 ¶ 31.) In her October 15, 2021 CRA dispute, Ms. Muniz also "included affidavits from her relatives—including her mother and father who live in Puerto Rico—definitively establishing her identity and victimization by the identity thief." (ECF No. 1 ¶ 31.)

**b.    Notices to Defendants**

On July 16, 2021, Ms. Muniz mailed letters to Statebridge, Roundpoint, and Freedom "disputing the inaccurate information being reported to the CRAs, requesting any and all documentation related to the disputed account(s), and notifying the [] Defendants that" an identity thief had opened the accounts, rendering them "fraudulent." (ECF No. 1 ¶ 34.) In her July 16, 2021 dispute, Ms. Muniz identified "which account(s) as furnished by each Defendant were inaccurate using excerpts of her consumer disclosures." (ECF No. 1 ¶ 35.) Additionally,

4

Ms. Muniz provided an executed "written authorization form . . . directing the release of all documentation to [Ms. Muniz's] counsel." (ECF No. 1 ¶ 35.)

As in her correspondence with the CRAs, Ms. Muniz provided "copies of her Social Security card, Virginia driver's license, and birth certificate as issued by the Commonwealth of Puerto Rico." (ECF No. 1 ¶ 35.) She also "enclosed copies of her FTC Identity Theft Report and Chesterfield County Police Report." (ECF No. 1 ¶ 35.)

### 3. Following Disputes from Ms. Muniz and Notices from the CRAs, Defendants Continue to Report Inaccurate Information in Ms. Muniz's Credit Files to the CRAs

In May 2021, each CRA created Automated Credit Dispute Verification forms ("ACDVs") "in response to Ms. Muniz's dispute regarding the inaccurate . . . account reporting in her credit files" in connection with fraudulently-opened mortgage accounts with Freedom, Roundpoint, and/or Statebridge.[4] (ECF No. 1 ¶¶ 41, 44, 49, 52–53, 61, 63.) "[B]ased upon the

---

[4] "When a consumer disputes the accuracy of information with the CRAs, the CRAs must transmit that dispute to the entity who furnished the information." (ECF No. 1 ¶ 5.) The ACDV "is the method by which . . . Defendants have elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a)." (ECF No. 1 ¶ 89.)

15 U.S.C. § 1681i(a), titled "Procedure in case of disputed accuracy" provides, in relevant part:

(a) REINVESTIGATIONS OF DISPUTED INFORMATION

(1) REINVESTIGATION REQUIRED

(A) In general
Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the

information [it] received" from Freedom, Roundpoint, and/or Statebridge, each CRA subsequently "verified the disputed reporting as accurate."[5]  (ECF No. 1 ¶¶ 41, 44, 49, 52–53, 61, 63.)  Inaccurate information related to mortgage accounts with Defendants remained in Ms. Muniz's credit reporting even after her April 20, 2021, July 12, 2021, and October 15, 2021 disputes sent to the CRAs.  (ECF No. 1 ¶¶ 32–33, 41, 44, 49, 52, 53, 61, 63, 82, 84.)[6]

In total, the three CRAs contacted Freedom collectively *four* times regarding Ms. Muniz's disputes, and each time Freedom reported inaccurate information about Ms. Muniz's credit information to the CRA.  (ECF No. 1 ¶¶ 41, 49, 61, 82.)  Also, two CRAs contacted Roundpoint and Statebridge once each regarding Ms. Muniz's disputes, and in response, both entities reported inaccurate information about Ms. Muniz's credit information to the CRAs.

---

item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a).

[5] With the exception of Trans Union's verification of the Statebridge account, which did not occur until September 2021, (ECF No. 1 ¶ 44), all of the other May 2021 ACDVs resulted in a verification that same month.  (ECF No. 1 ¶¶ 41, 49, 52, 53, 61, 63.)

Because Trans Union did not verify the Statebridge account until September 2021, as alleged, Statebridge untimely provided the requested information to Trans Union to make its verification determination.

[6] After receiving Ms. Muniz's April 20, 2021 dispute letter, Equifax did not remove any inaccurate reporting information, Experian removed "just one inaccurate account", and Trans Union removed "just three of these accounts."  (ECF No. 1 ¶ 32.)  After receiving Ms. Muniz's July 12, 2021 dispute letter, Equifax "again did not take any action remove the inaccuracies", and "Experian failed to respond . . . at all and continued to report the false and inaccurate information."  (ECF No. 1 ¶ 33.)  Even after Ms. Muniz's October 15, 2021 letter, Experian continued to report inaccurate information in Ms. Muniz's credit files related to mortgage accounts with Defendants.  (ECF No. 1 ¶¶ 82, 84.)

(ECF No. 1, ¶¶ 44, 52–53, 63.)  Statebridge failed to do so in the time period required by law. (ECF No. 1 ¶¶ 44, 52–53, 63.)

Following Ms. Muniz's July 16, 2021 direct contact with Defendants, Defendants again failed to remove inaccurate information related to the fraudulently-opened accounts.  (ECF No. 1 ¶¶ 34, 44, 68, 82, 84.)  Of the three remaining Defendants, only Roundpoint responded to Ms. Muniz's July 16, 2021 request.  (ECF No. 1 ¶¶ 68, 86.)  On approximately July 30, 2021, Roundpoint responded, stating "that based upon its review of the documents provided by Ms. Muniz, it was 'unable to substantiate [Ms. Muniz's] claim.'"  (ECF No. 1 ¶ 68 (alteration in original).)

### B.  <u>Procedural Background</u>

On January 31, 2023, Ms. Muniz filed her Complaint against eleven Defendants.[7]  Of the eleven original defendants, all but Freedom, Roundpoint, and Statebridge have been voluntarily dismissed from this case.  (ECF Nos. 88, 111, 113, 115, 117, 125, 127, 129.)

In the Complaint, Ms. Muniz asserts five causes of action under the Federal Fair Credit Reporting Act ("FCRA"):

> (1) **Count I:**  Defendants willfully or negligently failed to fully and properly investigate Ms. Muniz's credit reporting dispute in violation of 15 U.S.C. § 1681s–2(b)(1)(A).
>
> (2) **Count II:**  Defendants willfully or negligently "fail[ed] to review all relevant information provided by the CRAS with respect to Ms. Muniz's disputes" in violation of U.S.C. § 1681s–2(b)(1)(B).
>
> (3) **Count III:**  Defendants willfully or negligently "violated 15 U.S.C. § 1681s–2(b)(1)(C) and (D) by publishing false information within [Ms. Muniz's] credit files with the CRAs in response to her disputes without also including a notation that" Ms. Muniz disputed the account "and by failing to correctly report results of an accurate investigation to the CRAs."

---

[7] A list of the original eleven Defendants appears in Footnote 2.

(4) **Count IV:**  Defendants willfully or negligently "violated 15 U.S.C. § 1681s–2(b)(1)(E) by failing to accurately correct and update or delete [Ms. Muniz's] information after receiving [her] disputes [from] the CRAs and prior to the commencement of this action."

(5) **Count V:**  Statebridge willfully or negligently "violated 15 U.S.C. § 1681s–2(b)(2) by failing to complete all investigations, reviews, and reports required under 15 U.S.C. § 1681s–2(b)(1) prior to the expiration of the dispute response deadline pursuant to 15 U.S.C. § 1681i."

(ECF No. 1 ¶¶ 98, 102, 105, 107, 110, 115, 118, 120, 123, 125.)

As a result of Defendants' conduct as alleged in Counts I–V, Ms. Muniz has "suffered actual damages, including but not limited to:  out-of-pocket expenses[,] embarrassment, humiliation, and other mental and emotional distress."  (ECF No. 1 ¶¶ 99, 106, 114, 119, 124.)

The Defendants' Motions to Dismiss are fully briefed and will be evaluated below.

## II.  Standards of Review

### A.  Rule 12(b)(1)

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper.[8]  *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  A motion to dismiss pursuant to Rule 12(b)(1) can attack subject-matter jurisdiction in

---

[8] Defendants have raised the issue of standing in their Motions to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Because challenges to standing are generally addressed under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court will recharacterize Defendants' challenges to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *See Williams v. AM Lapomarda*, No. 3:19cv631 (DJN), 2020 WL 3643466, at *6 (E.D. Va. July 6, 2020) (citing *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009)).

one of two ways:  facially or in fact.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.

2009) (citing *Adams*, 697 F.2d at 1219).  Defendants' motions attack the Amended Complaint on

its face, asserting that it fails to state a claim upon which subject-matter jurisdiction can lie.

*See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219).  "When

a defendant makes [such] a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect,

is afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6)

consideration.'"  *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219).  In such a challenge,

a court assumes the truth of the facts alleged by plaintiff.  *See Int'l Longshoremen's Ass'n*, 914

F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219).[9]

## B.     Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

---

[9] Alternatively, and not relevant here, a Rule 12(b)(1) motion may also challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings.  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219); *see also Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219).  In such a case, because a party challenges the court's "'very power to hear the case' . . . the trial court is free to weigh the evidence to determine the existence of its jurisdiction."  *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)) (citing *Adams*, 697 F.2d at 1219).  "'[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"  *Id.* (quoting *Mortensen*, 549 F.2d at 891); *see also Adams*, 697 F.2d at 1219.

550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 570 (citations omitted).

### III.  Analysis

Defendants seek relief on three grounds:  (1) failure to satisfy the standing requirements under Article III of the United States Constitution (ECF No. 77-1, at 1, 8–9; ECF No. 95, at 2, 7); (2) lack of any willful violation of the FCRA (ECF No. 77-1, at 1, 3, 4–5; ECF No. 95, at 5 n.4); and (3) lack of actual damages caused by any Defendant, which is necessary to establish a negligent violation of FCRA, (ECF No. 77-1, at 3, 6–9; ECF No. 95, at 4, 5–7).

These arguments are unavailing.  Accepting Ms. Muniz's factual allegations as true and drawing reasonable inferences in her favor, as the Court must do at the motion to dismiss stage, the Court finds that Ms. Muniz has satisfied the standing requirements under Article III.  The Court also concludes that Ms. Muniz has alleged willful, or in the alternative, negligent violations of 15 U.S.C. § 1681s–2(b)(1)(A)–(E) (Counts I–IV) as to each Defendant, and of 15 U.S.C. § 1681s–2(b)(2) (Count V) as to Statebridge.

### A.    Ms. Muniz Has Article III Standing to Assert Her Claims

Defendants, who do not dispute that they are Furnishers for purposes of the FCRA, (*see generally*, ECF Nos. 77-1, 95), argue that Ms. Muniz has failed to meet the standing requirements under Article III of the United States Constitution.  (ECF No. 77-1, at 8–9; ECF No. 95, at 2, 7.)  Because standing is a jurisdictional question, the Court will address this argument first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and

limits of the judicial power of the United States' and is 'inflexible and without exception.'"
(alteration in original) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

Defendants argue that Ms. Muniz lacks standing to pursue her claims because she has
alleged no concrete, particularized injury-in-fact.  (ECF No. 77-1, at 8; ECF No. 95, at 7.)
Alternatively, Statebridge adds that Ms. Muniz's alleged injuries are not fairly traceable
to Statebridge's purported wrongdoing.  (ECF No. 77-1, at 8.)  Defendants do not prevail in
these arguments.

### 1.    Legal Standard:  Article III Standing

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to
"Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  As the United States Supreme
Court has explained, an "essential and unchanging part of the case-or-controversy requirement"
is that a plaintiff must establish Article III standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S.
555, 560 (1992).  In *Spokeo, Inc. v. Robins*, the Supreme Court reiterated that, to establish
standing, a plaintiff must have:  "(1) suffered an injury in fact, (2) that is fairly traceable to the
challenged conduct of the defendant; and[,] (3) that is likely redressable by a favorable judicial
decision."[10]  578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61; *Friends of the Earth,
Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

As the party invoking federal jurisdiction, Ms. Muniz bears the burden of properly
alleging standing.  *Lujan*, 504 U.S. at 561; *see also Balzer & Assocs., Inc. v. Union Bank & Trust
Co.*, No. 3:09cv273 (HEH), 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to
dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving

---

[10] No Defendant challenges whether Ms. Muniz's injuries are redressable by a favorable
judicial decision.  Therefore, this Opinion addresses only the first two parts of the test to evaluate
Article III standing.

subject matter jurisdiction." (citing *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991))). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to satisfy these elements], for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'" *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 329 (4th Cir. 2008) (alterations in original) (quoting *Lujan*, 504 U.S. at 561).

### 2.      Ms. Muniz Has Alleged a Cognizable Injury-in-Fact

#### a.      Legal Standard:  Demonstrating Injury-in-Fact

To establish an injury in fact, a plaintiff must demonstrate that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). For an injury to be "'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). For an injury to be "concrete," it must be "'real,' and not 'abstract.'" *Id.* at 340 (citation omitted). That said, an injury need not be "tangible" to be "concrete." *Id.*

In the credit reporting context, the United States Supreme Court has stated that "not all inaccuracies cause harm or present any material risk of harm." *Spokeo, Inc.*, 578 U.S. at 342. "[A] statutory violation *alone* does not create a concrete informational injury sufficient to support standing." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (emphasis in original) (citing *Spokeo, Inc.*, 578 U.S. at 331).

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc.*, 578 U.S. at 340. Congress may "'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 341 (alteration in original) (quoting *Lujan*, 504 U.S. at 578).

"Emotional distress has been found to constitute an injury[-]in[-]fact under the FCRA." *Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 61 (E.D. Va. 2018) (explaining that "at minimum, emotional distress is a concrete, intangible injury that Congress has identified as 'meet[ing] minimum Article III requirements'") (collecting cases). In *Miller*, the plaintiff's allegations of emotional distress and lowered credit score were sufficient to establish an injury-in-fact required for Article III standing to bring a FCRA claim. 326 F. Supp. 3d at 61–62.[11]

Although emotional injury can constitute an injury-in-fact, the Fourth Circuit has warned that "[n]ot only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims.'" *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (alteration in original) (quoting *Price v. City of Charlotte*, 93 F.3d 1241,

---

[11] Other Courts agree. *See Jarrett v. Experian Info. Sols., Inc.*, No. 3:20cv125 (DJN), 2021 WL 1381132, at *5 (E.D. Va. Apr. 12, 2021) (allegations that plaintiff lost opportunities to receive credit and experienced "considerable emotional distress", despite "provid[ing] minimal details", were "sufficient to state an injury-in-fact with respect to [defendant] inaccurately reporting [plaintiff's] mortgage account"); *Williams v. Microbilt Corp.*, No. 3:19cv085 (DJN), 2019 WL 7988583, at *2, *28 (E.D. Va. Sept. 23, 2019), report and recommendation adopted, No. 3:19cv85 (REP), 2020 WL 821033 (E.D. Va. Feb. 19, 2020) (allegations that defendant's FCRA violations "damaged [plaintiffs'] credit scores, violated their privacy[,] and caused them emotional and mental distress" were sufficient to survive motion to dismiss); *Denton v. JPMorgan Chase & Co.*, No. 4:19cv114 (MSD), 2020 WL 5909153, at *9 (E.D. Va. Oct. 6, 2020) (allegations of "emotional actual damages, beyond mere conclusory statements, [were] sufficient to survive a motion to dismiss" FCRA claims, observing that although plaintiff's allegations were "rather bare", they gave defendant "fair notice of the claims, and they [were] more robust than other FCRA cases within the Fourth Circuit that were not dismissed at this stage") (collecting cases).

1250 (4th Cir. 1996)).  Therefore, a plaintiff must "'reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements.'"  *Id.* (quoting *Price*, 93 F.3d at 1251 (internal quotation marks omitted)).

> **b.    Ms. Muniz Has Alleged a Cognizable Injury-in-Fact Stemming from Defendants' Purported Wrongdoing**

In their Motions to Dismiss, Defendants contend that Ms. Muniz has failed to allege a cognizable injury-in-fact.  Their arguments founder.

First, Statebridge broadly argues that "Plaintiff's boilerplate and threadbare allegations . . . fail to establish concrete injury to confer Article III standing."  (ECF No. 77-1, at 8 (collecting cases elaborating on the standard to establish concrete injury).)  Statebridge states that "Plaintiff's bare bone allegations of 'out of pocket expenses[,] embarrassment, humiliation, and other mental and emotional distress,' are unexplained by any facts."  (ECF No. 77-1, at 8.)

Similarly, Freedom and Roundpoint argue that "the lack of specific damages allegations coupled with the fact that the credit reporting at issue [from Freedom and Roundpoint] was positive (and likely beneficial to Plaintiff's credit) strongly suggests that she was not harmed and therefore lacks standing to sue as a matter of law."  (ECF No. 95, at 7.)

Here, Ms. Muniz's injuries are both "particularized" and "affect [her] in a personal and individual way."  *See Spokeo, Inc.*, 578 U.S. at 339.  The Court rejects Freedom and Roundpoint's contention that their inaccurate reporting cannot give rise to an injury-in-fact because any such inaccurate credit reporting nonetheless "was positive []and likely beneficial to Plaintiff's credit."  (ECF No. 95, at 7.)  As Ms. Muniz explains, "[a] consumer with an existing residential first mortgage loan is typically ineligible for a different first mortgage loan and has to include the inaccurately attributed loan payments in a debt ratio."  (ECF No. 104, at 6 n.2.)  It is plausible that this could cause Ms. Muniz emotional distress.  *See Jarrett*, 2021 WL 1381132, at

15

*5 (allegations that plaintiff lost opportunities to receive credit and experienced "considerable emotional distress", despite "provid[ing] minimal details", were "sufficient to state an injury-in-fact with respect to [defendant] inaccurately reporting [plaintiff's] mortgage account"). Moreover, it is plausible that Ms. Muniz could experience emotional distress from "having a stranger's mortgage hanging over [her] head . . . hoping the stranger makes all [of] his or her payments on time." (ECF No. 104, at 6 n.2.)  Ms. Muniz states that as a result of Defendants' conduct, she has "suffered actual damages, including but not limited to:  out-of-pocket expenses[,] embarrassment, humiliation, and other mental and emotional distress."  (ECF No. 1 ¶¶ 99, 106, 114, 119, 124.)

Although the Court knows that these allegations provide minimal details, the Court also acknowledges that it "must balance the Fourth Circuit's cautionary language regarding proof of emotional damages with Rule 8(a)(2)'s simpler requirement that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), so as to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Denton*, 2020 WL 5909153, at *8 (quoting *Twombly*, 550 U.S. at 555).  Considering Ms. Muniz's allegations together, the Court concludes that Ms. Muniz states that the inaccurate reporting of multiple mortgage accounts that she never opened caused her financial harm and various forms of mental and emotional distress, and this gives Defendants fair notice of her claims.  Even if such inaccurate reporting ultimately improved Ms. Muniz's credit score, Ms. Muniz's alleged financial harm coupled with her allegations of embarrassment, humiliation, and other mental and emotional distress are *just* sufficient, at this stage of the litigation, to establish an injury-in-fact with respect to Defendants' inaccurate reporting.  *See Miller*, 326 F. Supp. 3d at 61; *Jarrett*, 2021 WL 1381132, at *5; *Denton*, 2020 WL 5909153, at *9.

16

3.      **Ms. Muniz's Injuries Are Fairly Traceable to Statebridge's FCRA Violations[12]**

a.      **Legal Standard:  Demonstrating Traceability**

To show a causal connection, "the injury has to be 'fairly . . . trace[able] to the

challenged action of the defendant, and not . . . th[e] result [of] the independent action of some

third party not before the court.'" *Lujan*, 504 U.S. at 560 (alterations in original) (quoting *Simon

v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

To determine whether an injury is traceable to a defendant's actions, the relevant inquiry

is simply whether the Defendants' alleged actions are "at least in part responsible" for Ms.

Muniz's injuries.  *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 315–16 (4th Cir. 2013)

(traceability is not subject to "the stringent proximate cause standard[] derived from principles of

tort law"; instead, courts look to "whether the pleadings and proof demonstrate a sufficient

connection between the plaintiff's injury and the conduct of the defendant, such that a court

ought to assert jurisdiction over the dispute") (citing *Bennett v. Spear*, 520 U.S. 154, 168–69

(1997)).  Traceability "does not require the challenged action to be the sole or even immediate

cause of the injury." *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 284 (4th

Cir. 2018) (citing *Bennett*, 520 U.S. at 168–69).

b.      **Ms. Muniz's Injuries Are Traceable to Statebridge's FCRA Violations**

Statebridge argues that Ms. Muniz lacks Article III standing because her stated injuries

are not traceable to Statebridge's actions.  (ECF No. 77-1, at 8.)  Statebridge provides no

authority to support this proposition.  (*See* ECF No. 77-1, at 8.)  Raising an argument similar to

---

[12] Defendants Roundpoint and Freedom do not challenge whether Ms. Muniz's injuries are fairly traceable to their alleged wrongdoing for purposes of Article III standing.

Freedom and Roundpoint's injury-in-fact argument, Statebridge contends that Ms. Muniz has failed to allege any harm traceable to Statebridge where she does not "allege that the disputed [Statebridge] account is still open and where, "[a]rguably, a closed mortgage loan account without any derogatory reporting . . . may even positively impact a consumer's credit score." (ECF No. 77-1, at 7.)

In response, Ms. Muniz contends that her "injuries are traceable to Statebridge's [a]ctions", arguing that "Plaintiff's allegations . . . explain what Statebridge knew, what it failed to do despite that knowledge, and how those failures . . . harmed Plaintiff." (ECF No. 84, at 8.)

The Court concludes that, as to traceability, Ms. Muniz has the better argument. As discussed above, both Ms. Muniz and Trans Union put Statebridge on notice that Ms. Muniz disputed mortgage-related information that Statebridge was reporting. (ECF No. 1 ¶¶ 34, 44.) Statebridge never responded to Ms. Muniz's July 16, 2021 correspondence explaining these allegations and providing supporting documents. (ECF No. 1 ¶ 86.) In response to Trans Union's notification of Ms. Muniz's dispute, Statebridge provided inaccurate information that enabled Trans Union to incorrectly "verif[y] the disputed reporting as accurate." (ECF No. 1 ¶ 44.) Regardless of whether any fraudulently-opened Statebridge mortgage account ultimately helped her credit score, Ms. Muniz claims that as a result of Statebridge's actions, she has experienced "out-of-pocket expenses[,] embarrassment, humiliation, and other mental and emotional distress." (ECF No. 1 ¶¶ 99, 106, 114, 119, 124.) At this procedural posture, this sufficiently establishes traceability by demonstrating a sufficient connection between her injury and the conduct of Statebridge, even if the other Defendants also contributed to her injuries. *See Sierra Club*, 899 F.3d at 284 ("[T]he causation element of standing does not require the

18

challenged action to be the sole or even immediate cause of the injury." (citing *Bennett*, 520 U.S. at 168–69)); *see also Libertarian Party of Va.*, 718 F.3d at 315–16.

The Court concludes that Ms. Muniz has Article III standing to bring each of her claims. The Court now turns to Defendants' final argument: that Ms. Muniz has not plausibly alleged willful or negligent violations of the FCRA.

**B.     Ms. Muniz Plausibly Alleges Willful and Negligent Violations of the FCRA**

To the extent Defendants assert that Ms. Muniz has failed to state a claim under the FCRA, they do so only by arguing that Ms. Muniz (1) has not alleged any willful violation of the FCRA and (2) has failed to plead actual damages traceable to Defendants' conduct, which is necessary to allow Ms. Muniz to recover for a negligent violation of the FCRA. (ECF No. 77-1, at 3; ECF No. 95, at 5.) Traceability has been confirmed.

The Court concludes that Ms. Muniz plausibly alleges that Defendants' conduct amounted to willful or, in the alternative, negligent violations of the FCRA. Reading the Complaint in the light most favorable to Ms. Muniz, Defendants "repeatedly violated § 1681s–2(b), which is sufficient to find [that their] conduct was willful under the FCRA." *See Doss v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:20CV45 (MHL), 2021 WL 1206800, at *10 (E.D. Va. Mar. 30, 2021) (citing *Jones v. Equifax, Inc.*, No. 3:14cv678 (MHL), 2015 WL 5092514, at *3 (E.D. Va. Aug. 27, 2015)). Separately, Ms. Muniz plausibly alleges that Defendants' conduct was negligent because Ms. Muniz seeks actual damages stemming from Defendants' FCRA violations. *See id.*; *see also Harden v. Residential Credit Sols., Inc.*, No. 3:16cv668 (RCY), 2017 WL 2888763, at *5–6 (E.D. Va. June 12, 2017), *report and recommendation adopted*, No. 3:16cv668 (MHL), 2017 WL 2888721 (E.D. Va. July 6, 2017) (citation omitted).

19

1.      **Legal Standard:  Duties of Furnishers Under the FCRA**

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote

efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*,

551 U.S. 47, 52 (2007).  "To this end, FCRA requires CRAs to follow procedures in reporting

consumer credit information that both 'meet[ ] the needs of commerce' and are 'fair and

equitable to the consumer.'" *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 147

(4th Cir. 2008).

The FCRA imposes two general duties on furnishers of credit information ("Furnishers").

"The first subsection, § 1681s–2(a), provides that [F]urnishers have a general duty to provide

accurate and complete information; the next subsection, § 1681s–2(b), imposes an obligation to

review the previously disclosed information and report whether it was 'incomplete or inaccurate'

upon receipt of a notice of dispute from a CRA." *Id.* at 149.

Once the CRA notification triggers a Furnisher's duty to investigate, the Furnisher must

reasonably investigate its records to determine whether it can verify the disputed information

(the "Duty to Investigate").  15 U.S.C. § 1681s–2(b)(1)(A); *Johnson v. MBNA Am. Bank, NA*,

357 F.3d 426, 431 (4th Cir. 2004).  "'[W]hether a defendant's investigation is reasonable is

usually a factual question reserved for trial.'" *Tieffert v. Equifax Info. Servs., LLC*, No.

3:14cv609 (HEH), 2014 WL 7240263, at *4 (E.D. Va. Dec. 19, 2014) (quoting *Aviles v. Equifax

Info. Servs., LLC*, 521 F. Supp. 2d 519, 523 (E.D. Va. 2007)).  At a minimum, however, a

reasonable investigation "requires some degree of careful inquiry by creditors." *Johnson*, 357

F.3d at 430.

After conducting the investigation, the FCRA requires a Furnisher to report the results of

the investigation to the CRA that received the consumer dispute (the "Duty to Report

Investigation Findings").  15 U.S.C. § 1681s–2(b)(1)(C).  Importantly, if the Furnisher discovers inaccurate or incomplete information during its investigation, the FCRA requires that it report those findings to all other CRAs (the "Duty to Notify About Inaccurate or Incomplete Reporting"), as well as modify, delete, or block the reporting of the inaccurate or incomplete information going forward (the "Duty to Rectify Inaccurate or Incomplete Reporting"). 15 U.S.C. § 1681s–2(b)(1)(D) and (E).

When a CRA notifies a Furnisher of a credit dispute, the Furnisher is required to investigate "'the disputed information,' 'review all relevant information provided by the [CRA] . . . ,' and 'report the results of the investigation to the [CRA]' within thirty days of being notified of the dispute." *Mavilla v. Absolute Collection Serv., Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013) (citing 15 U.S.C. § 1681s–2(b)(1), (2), 15 U.S.C. § 1681i(a)).

### 2.   Ms. Muniz Plausibly States a FCRA Claim Against Each Defendant

Before turning to the questions of willfulness and negligence, the Court briefly observes that Ms. Muniz presents plausible theories of FCRA violations under § 1681s–2(b)(1)(A)–(E) against each Defendant, and under 1681s–2(b)(2) against Statebridge. *See Doss*, 2021 WL 1206800, at *8 (analyzing alleged violations of § 1681s–2(b)(A)–(D) on a motion to dismiss); *Harden*, 2017 WL 2888763, at *4–5 (analyzing alleged violations of 15 U.S.C. § 2(b)(1)(C) through (E) on a motion to dismiss); *Mavilla*, 539 F. App'x at 208 (when a CRA notifies a Furnisher of a credit dispute, the Furnisher is required to investigate "'the disputed information,' 'review all relevant information provided by the [CRA] . . . .' and 'report the results of the investigation to the [CRA]' within thirty days of being notified of the dispute" (citing 15 U.S.C. § 1681s–2(b)(1), (2), 15 U.S.C. § 1681i(a)).

First, Ms. Muniz "plausibly states a claim under § 1681s–2(b)(1)(A) [Count I] by alleging that [Defendants] failed to reasonably investigate [her] disputes about the [fraudulently-opened mortgage accounts]." *See Doss*, 2021 WL 1206800, at *8. Next, "[s]he plausibly states a claim under § 1681s–2(b)(1)(B) [Count II] by alleging that [Defendants] failed to review all the information the CRAs provided about [her] consumer disputes." *See id.* Third, Ms. Muniz plausibly states a claim under § 1681s–2(b)(1)(C) and (D) [Count III] by alleging that Defendants "failed to notify any CRA that [Defendants] reported inaccurate or incomplete information about the [fraudulently-opened mortgage accounts]." *See id.* Fourth, Ms. Muniz plausibly states a claim under § 1681s–2(b)(1)(E) [Count IV] by alleging that Defendants "[f]ailed to permanently and lawfully correct [their] own internal records to prevent re-reporting of inaccurate . . . information." *See Harden*, 2017 WL 2888763, at *5 (alteration in original) (citation and internal quotation marks omitted). Fifth and finally, Ms. Muniz plausibly states a claim under 1681s–2(b)(2) [Count V] against Statebridge by alleging that Statebridge failed to comply with its obligations to investigate the disputed information, review all relevant information provided by a CRA, and report the results of the investigation to the CRA within thirty days of being notified of the dispute. *See* 15 U.S.C. § 1681s–2(b)(2), 1681i(a)(1)–(2); *see also Mavilla*, 539 F. App'x at 208.

### 3. Ms. Muniz Plausibly Alleges That Defendants' Conduct Was "Willful" Under the FCRA Because She Alleges That Defendants Repeatedly Violated § 1681s–2(b)

Next, Ms. Muniz plausibly alleges that Defendants' conduct underlying the FCRA violations was willful. Willful violations include reckless conduct. *Safeco Ins. Co. of Am.*, 551 U.S. at 52, 57–58. Reckless actions entail "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S.

825, 836 (1994)).  "For the purposes of a Rule 12(b)(6) motion to dismiss, courts have found a plaintiff sufficiently pleads willfulness or recklessness when he or she asserts that a defendant has repeatedly violated FCRA or was aware of FCRA's requirements but failed to comply." *Jones*, 2015 WL 5092514, at *3 (citations omitted).  "[W]hether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question."  *Id.* (alteration in original) (quoting *Dennis v. Trans Union, LLC*, No. 14-2865, 2014 WL 532531, at *8 (E.D. Pa. Oct. 20, 2014)).

Here, Defendants received notice on multiple occasions—from both Ms. Muniz and the CRAs—that Ms. Muniz contested the accuracy of the reporting of mortgage accounts opened in her name with each Defendant.  Ms. Muniz notified all three Defendants via letter on July 16, 2021 "disputing the inaccurate information being reported to the CRAs, requesting any and all documentation related to the disputed account(s), and notifying the [] Defendants that" an identify thief had opened the accounts, and thus they were "fraudulent."  (ECF No. 1 ¶ 34.)  In her July 16, 2021 correspondence with Defendants, Ms. Muniz identified "which account(s) as furnished by each Defendant were inaccurate using excerpts of her consumer disclosures."  (ECF No. 1 ¶ 35.)  She also "enclosed copies of her FTC Identity Theft Report and Chesterfield County Police Report."  (ECF No. 1 ¶ 35.)  Statebridge and Freedom failed to respond in any way to Ms. Muniz's July 16, 2021 letter.  (ECF No. 1 ¶ 86.)  Roundpoint, however, responded, stating "that based upon its review of the documents provided by Ms. Muniz, it was 'unable to substantiate [her] claim.'"  (ECF No. 1 ¶ 68.)

Additionally, the CRAs contacted all three Defendants *multiple* times to verify information that Ms. Muniz had disputed, which all three Defendants then erroneously verified for the CRAs each time, thereby reporting inaccurate information regarding Ms. Muniz's credit

files. (ECF No. 1 ¶¶ 41, 44, 49, 52–53, 61, 63, 82, 84.) Three CRAs contacted Freedom collectively *four* times regarding Ms. Muniz's disputes, and each time Freedom reported inaccurate information about Ms. Muniz's credit information to the CRA. (ECF No. 1 ¶¶ 41, 49, 61, 82.) Experian notified Freedom twice regarding Ms. Muniz's disputes, and the second notification occurred after Ms. Muniz's July 16, 2021 letter to Freedom describing her dispute. (ECF No. 1 ¶¶ 34, 61, 82.) Also, two CRAs contacted Roundpoint and Statebridge once each regarding Ms. Muniz's disputes, and in response, both entities reported inaccurate information about Ms. Muniz's credit information to the CRA, and Statebridge allegedly failed to do so in the time period required by law. (ECF No. 1 ¶¶ 44, 52–53, 63.) Lastly, construing the facts in the light most favorable to Ms. Muniz, Statebridge verified inaccurate information with Trans Union about Ms. Muniz even after her detailed July 16, 2021 letter explaining her dispute, to which Statebridge never responded. (ECF No. 1 ¶¶ 34, 44.)

All told, Ms. Muniz claims that Freedom received at least five separate notifications regarding her reporting dispute (four from CRAs and one directly from Ms. Muniz). As to both Roundpoint and Statebridge, Ms. Muniz identifies three separate notifications regarding Ms. Muniz's reporting dispute, (two from CRAs and one directly from Ms. Muniz), that Statebridge failed to timely respond to one of the CRAs as required by law, and that both Freedom and Statebridge entirely failed to respond to Ms. Muniz's detailed July 16, 2021 dispute letter. Considered together, these allegations undergirding Ms. Muniz's FCRA claims against Defendants support a reasonable inference at the motion to dismiss stage that Defendants "'ha[ve] repeatedly violated [§ 1681s–2(b)] in the past and failed to correct' [their] inadequate investigation procedure[s]." *See Doss*, 2021 WL 1206800, at *11 (second alteration in original) (quoting *Jones*, 2015 WL 5092514, at *5). This is especially true given that "'[w]hether an act

24

was done with knowing or reckless disregard for another's rights remains a fact-intensive question.'" *Jones*, 2015 WL 5092514, at *3 (alteration in original) (quoting *Dennis*, 2014 WL 532531, at *8). Ms. Muniz therefore states a claim for willful violations of the FCRA by each Defendant. *See Doss*, 2021 WL 1206800, at *11 (citing *Jones*, 2015 WL 5092514, at *5).

### 4. Ms. Muniz Plausibly Alleges That Defendants' Conduct Qualifies as "Negligent" Under the FCRA Because She Alleges a Violation Occurred That Caused Her Actual Damages

In the alternative, Ms. Muniz plausibly pleads negligent violations. "[T]o state a claim for negligent violation of the FCRA, Plaintiff must merely allege (1) a violation and (2) actual damages stemming from such violation." *Harden*, 2017 WL 2888763, at *5 (citation omitted). The Court already has found that Ms. Muniz properly places several violations of the FCRA before the Court. The Court also has concluded that Ms. Muniz plausibly alleges actual damages connected to the inaccurate information related to the fraudulently-opened mortgage accounts, namely: "out-of-pocket expenses[,] embarrassment, humiliation, and other mental and emotional distress." (ECF No. 1 ¶¶ 99, 106, 114, 119, 124.) *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 240 (4th Cir. 2009) (finding actual damages in the form of lost opportunity in the mortgage market and emotional distress); *Miller*, 326 F. Supp. 3d at 61 ("Emotional distress has been found to constitute an injury[-]in[-]fact under the FCRA." (collecting cases)); *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 844 (E.D. Va. 2017) ("'The [United States Court of Appeals for the] Fourth Circuit has specifically affirmed awards of damages for emotional distress in FCRA cases.'" (alteration in original) (quoting *Burke v. Experian Info. Sols., Inc.*, No. 1:10cv1064 (AJT/TRJ), 2011 WL 1085874, at *8 (E.D. Va. Mar. 18, 2011))). This plainly suffices to show that Ms. Muniz plausibly alleges both willfulness and negligence in connection with her FCRA claims. *See Doss*, 2021 WL 1206800, at *11.

25

## IV.  Conclusion

For the foregoing reasons, the Court will DENY the Motions to Dismiss in their entirety.

(ECF Nos. 77, 94.)

An appropriate Order shall issue.

Date: **3/8/24**
Richmond, Virginia

_____ /s/ _____
M. Hannah Lauck
United States District Judge